[Cite as *In re C.K.W.*, 2015-Ohio-3288.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF:                    :

      C.K.W.                              :          CASE NO.  CA2015-01-011

                                         :          O P I N I O N
                                                    8/17/2015

                                         :

                                         :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 10-C01157

John Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, for petitioner-appellant

S.D., 3655 Sarah Street, Franklin, Ohio 45005, respondent-appellee, pro se

      **PIPER, P.J.**

      {¶ 1}  Petitioner-appellant, A.W. (Father) appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting custody of his child to respondent-appellee, S.D. (Mother).

      {¶ 2}  Father and Mother were never married, but had a child together, C.K.W. Mother and Father had shared parenting of the child, with the child essentially spending one week with Father and then one week with Mother.  Recently, Father married a woman who is enlisted in the Air Force.  Father's new wife was re-stationed in Colorado and Father asked

Mother if he could take the child with him and his wife to Colorado, where they had bought a house and resided in an area with good schools. Mother agreed, believing the move to be in the "best interest" of the child. However, Mother later called Father and told him that she had changed her mind, and that she would not allow Father to take the child with him to Colorado.

{¶ 3} Father and Mother filed alternative motions seeking to terminate shared parenting and each moving for custody of the child, who was five years old at the time of the motions. At a hearing on the matter, the magistrate heard testimony from Father, Mother, the child's preschool teacher, as well as maternal grandmother. The child was not interviewed. The magistrate terminated the shared parenting agreement and awarded custody of the child to Mother. Father filed objections to the magistrate's decision, which were overruled by the juvenile court. Father now appeals the juvenile court's decision, raising the following assignments of error. Because the assignments are interrelated, we will address them together.[1]

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT'S AWARD OF CUSTODY OF THE MINOR CHILD OF THE PARTIES CONSTITUTED AN ABUSE OF DISCRETION.

{¶ 6} Assignment of Error No. 2:

{¶ 7} THE TRIAL COURT'S FINDING THAT AWARDING CUSTODY OF THE MINOR CHILD OF THE PARTIES TO MOTHER WAS IN THE BEST INTEREST OF THE MINOR CHILD WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.

{¶ 8} Father argues in his two assignments of error that the juvenile court erred in

---

1. Mother has not filed an appellee's brief. As such, and according to App.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

awarding custody of the child to Mother.

{¶ 9} A juvenile court has discretion in custody matters, and its decision in such matters will not be reversed absent an abuse of that discretion. *In re A.D.*, 12th Dist. Fayette No. CA2012-07-023, 2013-Ohio-1308, ¶ 15. An abuse of discretion is more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.* While the trial court has considerable discretion in fashioning a custody award, its discretion is not absolute and is subject to reversal upon a showing of abuse. *Miller v. Miller*, 37 Ohio St.3d 71 (1988).

{¶ 10} According to R.C. 3109.04(E)(2)(c), a court may terminate a shared parenting decree upon request of one or both of the parents, or if the shared parenting plan is not in the best interest of the child. The decision to terminate a shared parenting plan and to then award custody of the child to one parent over the other is determined by a consideration and balancing of the factors set forth in R.C. 3109.04(F)(1) and (F)(2).[2]

{¶ 11} The factors within R.C. 3109.04(F)(1) that are relevant to the case sub judice include: the wishes of the child's parents regarding the child's care, the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest, the child's adjustment to the child's home, school, and community, the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights, whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court, and whether either parent has established a residence, or is planning to establish a residence, outside this state.

---

2. Father does not argue that the termination of the shared parenting agreement was an abuse of discretion. Instead, Father argues that the juvenile court's decision to award custody to Mother was an abuse of discretion. As such, we will focus our analysis on the factors as set forth in R.C. 3109.04(F)(1).

{¶ 12} A review of the record indicates that the juvenile court abused its discretion in awarding custody of the child to Mother, as the juvenile court's findings were sometimes unsupported by the record and did not properly balance statutory factors. The record indicates that the reason for the custody request was predicated upon Father's move to Colorado. This will undoubtedly disrupt the child's life in that he will be moved from Ohio and leave behind family members on both Mother's and Father's sides of the family. The juvenile court was correct to place ample weight on that evidence. However, the child's move from Ohio to Colorado is but one factor for consideration, and was not properly balanced against equally significant factors.

{¶ 13} Regarding the wishes of the child's parents as to the child's care, the record indicates that both Father and Mother desire to raise the child, and both moved for custody. Although Mother initially agreed that the move to Colorado was in the child's "best interest," she later changed her mind. When asked why she changed her mind, Mother relied solely on the fact that the child would miss his Ohio family. Otherwise, Mother did not express any concerns regarding Father's ability to raise or care for the child.

{¶ 14} Specific to the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect his best interest, as well as the child's adjustment to his home, school, and community, the juvenile court gave great weight to the fact that all of the child's family resides in Ohio. Stated once more, the court was correct to assign ample weight to the fact that the child's family lives in Ohio and that he has spent his entire life in the same community. However, the record overwhelmingly demonstrates that the child's interaction and interrelationship with Mother and her Ohio family is not always beneficial to the child, and that placement with Mother is not in the child's best interest.

{¶ 15} Regarding the child's interaction and relationship with Mother and Father specifically, the record clearly indicates that Father has made the child a priority and has

- 4 -

provided consistency and structure in the child's life with an emphasis on education, while Mother has not. Similarly, the record demonstrates that the child's adjustment to his community and school is markedly different depending on who is in charge of the child's care for that particular week.

{¶ 16} The child's preschool teacher testified that Father has consistently transported the child to school, while Mother did not, and that Father came to both parent-teacher conferences, while Mother did not. The teacher also testified that when the child is with Father, the child's attendance is consistent, but when with Mother, the child's attendance was "very spotty." Moreover, when the child was with Mother, the child came to school "very tired" and would not focus during class. The child's behavior at school was negative during the time that Mother had custody, while the child's behavior was better when Father was the custodial parent. The teacher also testified that the child completed assigned homework when with Father, but not with Mother.

{¶ 17} Similarly, Father testified that he would receive calls from the child's school and teachers asking why the child was not in school on days that the child was with Mother. Father testified to his belief that the child would have a more consistent life with him, as Father helps the child focus on school and homework, while Mother does not. For example, Mother once told Father that school is not important for the child, and Mother later admitted during her cross-examination that education is not a priority in her family.[3] Mother did not have the child attend a school-camp to help the child transition from pre-school to kindergarten, and when asked why, she stated that the child slept too late and that he went fishing with his grandfather instead of going to school.

---

3. The juvenile court heard testimony that the only family member in Mother's family who has a high school diploma/GED is Mother's father, that Mother does not make the child's attendance in school and school-related activities a priority, and that Mother's school-age brother with whom she lives has truancy issues.

{¶ 18} Father also testified to the conditions in which Mother was raising the child, including that Mother had approximately ten addresses and different living arrangements in the past two years, and that sometimes when he would pick up the child for visitation, Mother and her other children, including C.K.W., were located at a different address than where Father had dropped off the child for visitation the week before. The various residences where Mother and her children would stay belonged to family members, friends, or boyfriends of Mother, but Mother did not maintain any consistent housing on her own. Mother also had no less than six different phone numbers in the two years preceding the hearing.

{¶ 19} During his testimony, Father described the residence where Mother was currently living with her extended family and her children, including, C.K.W. The house had no back door, uninstalled insulation, exposed wiring, missing door knobs on the doors, and exposed plywood that was rotten. Also, the only room in the house that had drywall was the bathroom, and there was no furnace in the home. Maternal grandmother testified that there were holes in the flooring, but that the children who lived there, including C.K.W., knew to be careful around the holes, and that some windows in the home were broken. The record indicates, and both Mother and her mother confirmed during their testimony, that children services had investigated the condition of the home on multiple occasions and was engaged with the family to make the home more livable for the children.

{¶ 20} Father also testified that while he takes the child to all of the child's medical appointments, Mother only attends some and also failed to fill the child's prescription for an inhaler that is required on a daily basis. Father also testified that the child is always tired upon the child's return from visits with Mother, but that when the child is with him, the child has a regulated napping schedule and consistent bed time. Father testified that the child is well-behaved when with him, while Mother testified the child does not behave with her. The child's behavioral issues when with Mother include screaming, calling her names, and

throwing temper tantrums.

{¶ 21} Mother also admitted that she has not had consistent employment in her past, and is on food stamps. She has been in two car accidents, one of which was her fault and occurred when she was driving on a suspended driver's license. Mother had previously lost her license as a result of a DUI offense, and had not yet regained a valid driver's license. Mother testified that she has a pending judgment as result of the car accident against her for $32,000 and that she cannot get her license back until she claims bankruptcy and discharges the judgment. Mother had no viable transportation option, as her mother did not drive, and her father is a long-haul truck driver who can be gone for weeks at a time.

{¶ 22} The fact that Mother does not have a valid driver's license or consistent transportation has affected the way in which she visited with the child, or did not visit with the child, as the case may be. Father, Mother, and Maternal grandmother all testified that Mother had missed visitation with the child because she lacks transportation, or that she would be late picking the child up because she was trying to arrange last-minute transportation. The record demonstrates that either Mother would be late, sometimes by hours, or not pick the child up at all on countless occasions.[4] For this reason, and after months of Mother failing to abide by the designated pickup time, Father began to deny Mother visitation when she was late in getting the child.

{¶ 23} The juvenile court placed significant weight on the fact that Father had denied Mother some visitation, and expressed concerns that Father would deny Mother visitation in the future when analyzing the factors of which parent would more likely honor and facilitate court-approved parenting time and whether either parent continuously and willfully denied the other parent's right to parenting. While the juvenile court rightly indicated that Father denied

---

4. Mother also freely admitted that she missed other periods of vitiation because she was intoxicated and could not pick up the child.

Mother's visitation when Mother was late in getting the child, the juvenile court's concern that Father would deny future visitation is not supported by the record.

{¶ 24} First, the juvenile court's findings do not recognize the fact that in denying Mother visitation, Father was in compliance with the shared parenting plan previously adopted by the court. According to the shared parenting plan in place,

> the transporting parent for parenting time shall have a grace period of fifteen minutes for pick up and delivery if both parties live within thirty miles of each other. * * * In the event the non-residential parent exceeds the grace period, *that period of parenting time is forfeited* unless prior notification and arrangements have been made * * *. Repeated violations by either parent shall be cause for granting a modification of the parenting order.

(Emphasis added.) The record demonstrates that on numerous occasions, Mother was more than 15 minutes late when picking up the child, without first making prior arrangements to pick up the child at a different time. Thus Father had a legitimate justification for denying Mother visitation on numerous occasions.

{¶ 25} Despite the juvenile court's indication that it "finds it difficult to believe the Father is likely to facilitate visitation, encourage the sharing of love, affection, and contact between the child and the other parent," the record simply does not support a finding that Father wrongly denied visitation to Mother or that Father would not facilitate visitation in the future. Instead, Mother admitted during her testimony that Father never denied her visitation unless she was late, and Father testified that he would pay for the child to fly back to Ohio to visit with Mother. Father also testified that he would encourage the child to communicate with Mother by telephone and visual media, such as FaceTime. No evidence was presented that Father directly or indirectly obstructed, interfered with, or diminished the mother-child relationship.

{¶ 26} The juvenile court's decision also relied upon there being no evidence in regard

to the child's relationship with Father's wife. For this reason, the juvenile court concluded that "a move to Colorado still presents many unknowns," and "there was no other evidence presented, aside from Father's mere conjectures, to substantiate that life for [the child] will be better in Colorado." However, this finding is not supported by the record. There is no indication in the record, whatsoever, that the child did not have a beneficial relationship with Father's new wife, and Mother never once indicated that Father's wife was a problem or that having the wife in the child's life was detrimental to him. Moreover, the record is replete with reasons why Father has provided a more stable life for the child and why his having custody is in the child's best interest. While the juvenile court considered the evidence as being "Father's mere conjectures," the evidence was deduced from uncontroverted testimony, including the child's teacher, Mother's own testimony, as well as the testimony from maternal grandmother.

{¶ 27} We do not enter this decision lightly. We are completely aware of the broad discretion given to trial courts when making custody determinations. However, the two factors heavily relied upon by the juvenile court regarding the child missing his Ohio family and Father denying Mother visitation were not properly weighed against all of the other factors that weigh heavily in favor of Father having custody. The record does not support the juvenile court attributing to Father an intention to deny Mother a relationship with her son. And, without doubt, the child will miss family members just as he would miss the extensive, positive influence Father has had in the child's life thus far. Yet, when giving weight to the factors involved, the child's best interest is paramount. The juvenile court's decision is reversed as we find that pursuant to R.C. 3109.04 and App.R. 12(B), substantial justice has not been done the party complaining and Father is entitled to custody as a matter of law. *See Mary B v. Zollie M.*, 6th Dist. Lucas No. L-96-120, 1997 WL 90612 (Feb.28, 1997) (granting custody of a child to its mother despite the trial court granting custody of the child to

- 9 -

its grandparents). Furthermore, given the record in this case, in conjunction with Mother's failure to file a brief, it is readily apparent that Father is entitled to custody. *In re M.B.*, 9th Dist. Summit No. 26004, 2012-Ohio-687. We also remand the case so that the juvenile court can establish proper child support in light of the change of custody.

{¶ 28} Judgment reversed and custody of the child is awarded to Father. The matter is remanded for further proceedings consistent with this opinion.

S. POWELL and HENDRICKSON, JJ., concur.